**MINNESOTA MIN. & MFG. CO. v. COE,**
**Com'r of Patents.**
**No. 6584.**

United States Court of Appeals for the District of Columbia.

Decided May 18, 1936.

H. H. Benjamin, of Washington, D. C., and J. T. Basseches, of New York City, for appellant.

R. F. Whitehead, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Plaintiff below appeals from a decree of the Supreme Court of the District of Columbia dismissing its bill of complaint in an action brought under section 4915, R.S., as amended (35 U.S.C.A. § 63) to secure a patent.

Plaintiff company sought in the court below a decree requiring the Commissioner of Patents to issue a patent to its assignor, William Luxmore. The alleged invention consists of a flexible abrader and the process of making it. This article is commonly known as sandpaper.

The novelty in the various disclosures consists in using a binder for the attaching of the abradent material to the backing of paper. The process disclosed in the application of Luxmore consists in first impregnating the sheet of paper with a thin, flexible phenol-aldehyde resin varnish, and then applying a second coat to the sheet and distributing the abrasive matter on the latter coat. It is then hardened by baking.

The original Luxmore application was placed in interference with an application of one Carlton and an application of one Klingspor. Klingspor was eliminated because of the date of invention alleged by him, and Luxmore conceded priority to Carlton as to the invention covered by the claims in issue in the interference. Patents were subsequently issued to Klingspor and Carlton.

A number of the claims involved in the interference are embraced in the Carlton patent, of which claim 1 for the article, and claim 6 for the process, are illustrative:

"1. The new article of manufacture, flexible sandpaper, which includes a backing, a grit or layer of abrasive particles, and a bond for uniting the grit to the backing including a synthetic resinous condensation product which is solidified to a flexible and waterproof state."

"6. The process of forming a flexible waterproof abrasive article which comprises condensing an aldehyde and a phenol in the presence of a catalyst at low temperatures to produce an adhesive product, applying such products together with an abrasive grit to a suitable backing, and heating said product whereby to form an abrasive device which is flexible when solidified and insoluble in the presence of moisture and friction."

Following the interference, Luxmore amended his application to include the claims involved in this suit. They were rejected by the Patent Office as not being patentable over the Carlton patent and a patent to one Graft. The holding of the Patent Office was sustained by the court below. Claims 25 and 29 are illustrative of the claims here in issue and are as follows:

"Claim 25: The method of making an abrasive article which includes as steps thereof, employing a backing, applying a synthetic resinous presizing coating to said backing and permitting the same to partially set, then applying a binder and

a coating of similar material and grit to said backing to form the complete abrasive article."

"Claim 29: The method of making an abrasive article which includes as steps thereof, employing a backing, applying a synthetic resinous condensation product in a volatile thinner to penetrate the backing and saturate the fibres, airdrying the sheet so treated to partially set the resinous impregnating coating, applying a binder coat of a synthetic resinous composition, partially setting the binder coat so applied, anchoring a grit or layer of abrasive particles in the binder coat and then finally baking the article so made."

The novelty in these claims, if there be such, over what is shown in the prior art, consists in allowing the presizing coating partially to set and, before it becomes hardened, applying the binding coat to which the abrasive substance is applied. It is contended that Carlton's invention calls for only a single coat before the application of the abrasive substance, but an examination of the specification of the Carlton patent discloses the following statement:

"I have found in practice that the number of coats of the binder may also beneficially be varied . * * *.

"I have also discovered that my improved binder may be suitably modified to permit its beneficial use as an auxiliary coating for waterproofing one or both sides of the base * * *."

It thus appears that Carlton was the originator of the idea of applying more than one coat as a base for the abrasive substance. In other words, he discloses the use of phenolic condensation as the binding substance and the use of more than one coat.

The only distinction which can be made in favor of Luxmore is the failure of Carlton to disclose in his specification whether the first coat is to be dried, partially dried, or not dried at all. It is upon this distinction that Luxmore rests his case.

The Patent Office held that Luxmore could not be permitted to obtain a patent, since his claimed invention was not inventively different from the prior work of Carlton. In the original Luxmore application the invention now claimed was not even suggested. The only reference to a partial drying process was as follows: "After the aforesaid impregnating operation has been accomplished, the sheet is permitted partially to dry,—say for about thirty minutes at room temperature."

In holding that the claims in issue defined nothing patentable over the patent to Graft, and in view of the patent to Carlton, the examiner said: "Graft discloses the practice of impregnating the flexible backing in the first operation with a waterproofing adhesive material and then applying as a second step a second coating of the same adhesive material as a binder for the grit. The expedient of applying the second coating before the first coating is entirely dry is not considered to be a patentable variation of Graft's method. It would seem to be obvious that an adhesive would more readily adhere to a soft tacky surface of the first coating than it would to a hard smooth surface formed by thoroughly drying the first coating. Patent to Carlton discloses the use of a synthetic resin as an adhesive for attaching abrasive grains to a backing and no invention is seen in substituting Carlton's resinous adhesive for Graft's waterproofing and grit attaching adhesive. Carlton further discloses the practice of setting or curing the resinous adhesive by baking."

We think, on the whole case, that the Patent Office and the court below were right in holding that the advance in the art here claimed by Luxmore is so apparent to one skilled in the art as to deprive it of the character of invention. The disclosures in the specifications of each of the parties are such as to indicate a process which would produce the common result which each of the inventors was seeking.

█ The rule of obviousness applied in patent cases is much stricter than the general idea of something which readily presents itself to the eye of every one as obvious. The rule in patent cases is well stated in Tolfree v. Wetzler (D.C.) 22 F.(2d) 214, 223: "The test is what is obvious to a person skilled in the art and acquainted with the common knowledge in that art at the date of the patent."

Inasmuch as Graft, Carlton, and Luxmore were each seeking a common end, we think that to those skilled in the art the claimed advance made by Luxmore would amount to nothing more than an obvious step to accomplish the end desired.

The decree is affirmed.